**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| DOUGLAS E. SCHOEN,<br>1111 Park Avenue, Apt. 6<br>New York, NY 10128,<br><br>          Plaintiff,<br><br>          v.<br><br>CHRISTOPHER COOPER,<br>644 9th St., NE<br>Washington, DC 20002<br><br>THE POTOMAC SQUARE GROUP,<br>660 Pennsylvania Ave. SE, Suite 303<br>Washington, DC 20003<br><br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)   Case No.<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

---

## COMPLAINT

Plaintiff Douglas E. Schoen, by and through his undersigned counsel, hereby files this Complaint against Defendant Christopher Cooper and Defendant Potomac Square Group arising from Defendants' false and defamatory statements regarding Mr. Schoen. Defendants' false and defamatory statements harmed Mr. Schoen's personal and business reputation and caused Mr. Schoen to suffer economic and reputational damages.

### THE PARTIES AND OTHER RELEVANT PERSONS

1. Plaintiff Douglas E. Schoen is a New York-based political and strategic consultant. As one of the most influential political and campaign consultants in the United States, Mr. Schoen has advised such prominent individuals as President Bill Clinton, Vice President Al Gore, New York City Mayor Michael Bloomberg, Israeli Prime Minister Shimon Peres, and Microsoft Chairman Bill Gates. Mr. Schoen is the author of eight books and is a regular contributor to the

Wall Street Journal, the Washington Post, the New York Daily News, and various other newspaper and online publications. He is a Fox News Contributor, making appearances on various news programs daily. Mr. Schoen is the founder of Schoen Consulting, a New York based consulting firm through which Mr. Schoen provides services to his clients. Mr. Schoen is a resident and citizen of the State of New York.

2.     Defendant Christopher Cooper is public affairs consultant and the founder and principal of Defendant Potomac Square Group. Defendant Cooper made false and defamatory statements regarding Mr. Schoen to, among other audiences, a reporter at The New York Times and a political and public affairs consultant, with the specific hope and intention that these individuals would repeat and republish his defamatory falsehoods about Mr. Schoen to others. Defendant Cooper is a resident and citizen of the District of Columbia.

3.     Defendant Potomac Square Group is a Washington, D.C. based consulting firm founded by Defendant Cooper. Defendant Potomac Square Group provides public affairs counsel to corporate clients, foreign governments, trade associations, overseas political candidates and NGOs. Defendant Potomac Square Group is organized under the laws of the State of Delaware and maintains its principal place of business in the District of Columbia.

4.     Non-Party Victor Pinchuk is one of Mr. Schoen's clients. Mr. Pinchuk is a Ukrainian citizen and founder and majority owner of the Interpipe Group, a Ukrainian metallurgical mill. Defendants' false and defamatory statements about Mr. Schoen relate to the work that Mr. Schoen has undertaken on Mr. Pinchuk's behalf.

5.     Non-Party Amy Chozick is a reporter for The New York Times. Defendants made false and defamatory statements regarding Mr. Schoen to Ms. Chozick in a deliberate effort to plant, foster and promote a negative article in the New York Times that, if published in the manner

Defendants intended, would have falsely accused Mr. Schoen of violating Foreign Agent Registration Act (FARA) and federal lobbying laws, falsely described Mr. Schoen's interactions with senior government officials, and intentionally mischaracterized the philanthropic and humanitarian work that Mr. Schoen was undertaking on Mr. Pinchuk's behalf.

6.      Non-Party Trish Reilly is a consultant and lobbyist.  Defendants hired Ms. Reilly and her consulting firm, Reilly Consulting, LLC, and mislead them about the identity of Defendants' client and the true facts in an effort to induce Ms. Reilly to making false and damaging statements about Interpipe, Mr. Pinchuk and Mr. Schoen to members of Congress, Congressional staffers, media outlets and other thought leaders in Washington, D.C.

## JURISDICTION

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because the Plaintiff and the Defendants are citizens of different states and the amount in controversy exceeds $75,000.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all of the Defendants reside and/or have their principal place of business in the District of Columbia, and because a substantial part of the events giving rise to Mr. Schoen's claims occurred in the District of Columbia.

## FACTUAL ALLEGATIONS

### Mr. Schoen Advises And Represents Victor Pinchuk
### In Philanthropic And Humanitarian Concerns

9.      Victor Pinchuk is a Ukraine oligarch, financier, and former member of the Ukrainian Parliament.

10.      In 2000, Mr. Pinchuk hired Mr. Schoen to serve as a consultant and strategic advisor.  Acting in that capacity, Mr. Schoen has helped introduce Mr. Pinchuk to philanthropic

and political groups in the United States and abroad.  These efforts by Mr. Schoen have helped make Mr. Pinchuk a prominent international figure.

11.     In 2004, Mr. Schoen introduced Mr. Pinchuk to former President Bill Clinton.  Mr. Pinchuk and former President Clinton have been friends since that introduction.  Mr. Pinchuk has supported and donated to several of President Clinton's charitable institutions since 2006, including donations to the Clinton Foundation.

12.     In 2011, Mr. Schoen registered with the United States Department of Justice pursuant to the requirements of the Foreign Agents Registration Act (FARA) in order to represent Mr. Pinchuk in certain interactions with U.S. government officials and the U.S. media.  As the registered foreign agent for Mr. Pinchuk, Mr. Schoen exclusively assisted Mr. Pinchuk with humanitarian efforts to peacefully resolve conflicts in the Ukraine, including efforts to improve the democratic and economic circumstances facing the Ukraine over the last four years.

13.     On several occasions between 2011 and 2014, Mr. Schoen arranged for meetings between Mr. Pinchuk and various advisors to Bill and Hillary Clinton.  Each of these meetings was for the sole and exclusive purpose of assisting with humanitarian efforts in the Ukraine and for a peaceful resolution of Ukrainian conflicts.

**Defendants Seek To Avoid Discovery Of Their Defamation
Campaign By Subverting FARA Disclosure Requirements**

14.     On or before December 3, 2013, Defendant Cooper and Defendant Potomac Square Group retained lobbyist and political consultant Trish Reilly and her lobbying firm, Reilly Consulting, LLC.  Defendants retained Ms. Reilly to lobby members of the Congressional Steel Caucus and their staffers to focus Congressional and media scrutiny on Interpipe Group, a Ukrainian steel company owned primarily by Victor Pinchuk.

15.     Defendant Cooper initially refused to disclose to Ms. Reilly who his client was and who would ultimately be paying her to conduct the lobbying work.  Defendant told Ms. Reilly that, if asked by her Congressional contacts, she should state only that her "client" was Defendant Potomac Square Group.

16.     Eventually, after Ms. Reilly pressed Defendant Cooper for more information and suggested that she would not be willing to proceed without more information about the client, Defendant Cooper informed Ms. Reilly in a December 3, 2013 email message that "our client" for the lobbying engagement is "a UK consultancy that has been retained by ConsMin."  Defendant Cooper described ConsMin to Ms. Reilly as "an [A]ustralian mining company that is involved in a business dispute with [I]nterpipe."

17.     On information and belief, Defendant Cooper misled or, at a minimum, provided materially incomplete information to Ms. Reilly about the true identity of the client and the economic interests that would be funding her lobbying efforts and engagement.

18.     ConsMin is an Australian mining company partially owned by the Privat Group, a Ukrainian business group.

19.     The Privat Group is run by Ihor Kolomoisky, a Ukrainian citizen and an economic and political rival of Victor Pinchuk.

20.     In addition to pressing Defendant Cooper for information about the ultimate client, Ms. Reilly also pressed Defendant Cooper to make sure that their work would comply with applicable federal lobbying and disclosure laws.  In a December 5, 2013 email message to Defendant Cooper, Ms. Reilly asked whether they would be required to register with the Department of Justice pursuant to the Foreign Agents Registration Act (FARA) in order to undertake the requested work for Defendants' client.

21.     In response to this inquiry, Defendant Cooper once again lied to Ms. Reilly about the disclosure requirements, falsely telling Ms. Reilly in a December 5, 2013 email message that "there is no FARA" requirement to register as an agent for a Ukrainian principal.

22.     Undeterred by this response, Ms. Reilly informed Defendant Cooper that "[W]e [still] need to file a regular lobbying registration" under FARA.  Defendant Cooper responded by stating that "I wont be able to do that, unfortunately."

23.     On information and belief, Defendant Cooper provided vague and/or misleading information to Ms. Reilly about the nature of their client, and resisted Ms. Reilly's efforts to ensure that they properly registered under FARA, because Defendant Cooper sought to conceal the true identity of his client, and because Defendant Cooper knew that a significant component of the engagement would involve making false and damaging statements about Interpipe, Mr. Pinchuk, and Mr. Schoen, and Defendant Cooper did not want his smear campaign, or his clients, to be exposed or subjected to public scrutiny.

**Defendant Cooper Make False And Defamatory Statements About Mr. Schoen To Trish Reilly With The Intention That They Will Be Repeated And Republished To Congressional Staffers, Members Of Congress, And Others**

24.     Defendant Cooper provided specific instructions and "messaging" points to Ms. Reilly regarding the false statements that he wanted her to make to Congressional staffers and others about Interpipe, Mr. Pinchuk, and Mr. Schoen.

25.     Defendant Cooper instructed Ms. Reilly to tell Congressional staffers and others that "[I]nterpipe is the [U]kraine company that is accused of dumping" steel into international markets.

26.     Defendant Cooper provided written instructions to Ms. Reilly to focus all of her discussions with Congressional staffers and others on efforts by Interpipe to "dodge responsibility" for dumping steel into international markets.

27.     Defendant Cooper instructed Ms. Reilly to tell Congressional staffers that, among other activities designed to "dodge responsibility" for dumping steel, Interpipe and Mr. Pinchuk had attempted to "pressure" the U.S. State Department to intervene in the pending trade dispute and advocate for Interpipe's position.

28.     Defendant Cooper provided Ms. Reilly with specific, written "messaging" points that he directed Ms. Reilly to use with Congressional staffers, members of Congress, and other audiences in support of this false thesis.

29.     Defendant Cooper's "messaging" points included the false statement that Mr. Schoen, whom he specifically described to Ms. Reilly as "a non-lobbyist," had "met repeatedly" with a senior adviser to [then Secretary of State] Hillary Clinton.  According to Defendant Cooper, these meetings were part of Interpipe and Victor Pinchuk's concerted efforts to "pull out all the stops" and "pressure" the U.S. State Department to intervene in the dumping dispute.

30.     Defendant Cooper's statements about Mr. Schoen, both directly and by implication, falsely accused Mr. Schoen of violating FARA and federal lobbying laws, falsely described Mr. Schoen's interactions with senior government officials, and intentionally mischaracterized the philanthropic and humanitarian work that Mr. Schoen was actually undertaking on Mr. Pinchuk's behalf during meetings with U.S. officials.

31.     Defendant Cooper intentionally crafted and issued his "messaging" points to Ms. Reilly with the knowledge and the specific intention that Ms. Reilly would repeat and republish these false and defamatory statements about Mr. Schoen to members of Congress, Congressional staffers, media outlets, and other thought leaders in Washington, D.C.  Defendant Cooper's purpose in providing these "messaging" points to Ms. Reilly was to disparage and defame

Interpipe, Mr. Pinchuk, and Mr. Schoen and foster negative public scrutiny their activities based on the false pretenses set forth in the "messaging" points.

**Defendants Make False And Defamatory Statements
About Mr. Schoen To The New York Times**

32.     Beginning in December 2013 and continuing into January and February 2014, Defendant Cooper communicated repeatedly with Amy Chozick, a reporter for the New York Times.  Consistent with his stated goal and the other activities he had already set in motion to discredit Interpipe and individuals affiliated with Interpipe, Defendant Cooper's purpose in communicating with the New York Times was to plant, encourage, foster, and promote a negative article in the New York Times that would focus on Interpipe's alleged efforts to "dodge responsibility" for dumping steel in international markets.

33.     Defendant Cooper's communications to Ms. Chozick focused on allegations that, as part of their efforts to intended to "pull out all the stops" for the dumping case, Interpipe and Mr. Pinchuk had attempted to "pressure" Hillary Clinton and the U.S. State Department to intervene in the pending trade dispute and advocate for Interpipe's position.

34.     Defendant Cooper's written communications to Ms. Chozick included the false statement that Mr. Schoen, whom he specifically described to Ms. Chozick as "a non-lobbyist," had "met repeatedly" with a senior adviser to [then Secretary of State] Hillary Clinton as part of Interpipe and Victor Pinchuk's concerted efforts to "pull out all the stops" and "pressure" the U.S. State Department to intervene in the dumping dispute.

35.     Defendant Cooper's statements about Mr. Schoen to the New York Times, both directly and by implication, falsely accused Mr. Schoen of violating FARA and federal lobbying laws, falsely described Mr. Schoen's interactions with senior government officials, and

intentionally mischaracterized the philanthropic and humanitarian work that Mr. Schoen was actually undertaking on Mr. Pinchuk's behalf during meetings with U.S. officials.

36.     Defendant Cooper drafted and published these written statements to Ms. Chozick with the hope and specific intention that Ms. Chozick would repeat and republish these false and defamatory statements about Mr. Schoen in an article published in the New York Times. Defendant Cooper's purpose in doing so was to disparage and defame Interpipe, Mr. Pinchuk, and Mr. Schoen and foster negative public scrutiny their activities based on the false pretenses set forth in Defendant Cooper's written statement to Ms. Chozick.

37.     For nearly a month, Ms. Chozick contacted Mr. Schoen repeatedly, both verbally and in writing, to ask pointed questions based on the false information she had received about him from Defendant Cooper.  Mr. Schoen repeatedly denied to Ms. Chozick that that he had violated any laws and repeatedly informed her the introductions and meetings he had conducted and arranged with U.S. officials were in no way related to Mr. Pinchuk's commercial interests.  Mr. Schoen repeatedly and correctly stated that the meetings and introductions were exclusively for humanitarian purposes and related exclusively to Mr. Pinchuk's efforts to promote democracy and help resolve the conflict in the Ukraine.

38.     On information and belief, Ms. Chozick contacted other individuals and organizations, both verbally and in writing, to ask pointed questions about Mr. Schoen based on the false information she had received from Defendant Cooper.  In asking these questions, Ms. Chozick repeated the false information she had received about Mr. Schoen from Defendant Cooper and, in so doing, further defamed and disparaged Mr. Schoen.

39.     Given the seriousness of the false allegations being made against him, given the fact that the false information was being further disseminated by Ms. Chozick in the course of her

newsgathering activities, and given the very real possibility that these false allegations would appear in an article in the New York Times, Mr. Schoen was forced to contact professional colleagues and other persons with knowledge of the relevant facts to corroborate his statements to Ms. Chozick.  Mr. Schoen found it embarrassing and humiliating to have to contact individuals to corroborate his denials and rebut the false information being spread about him.

40.     Mr. Schoen also retained counsel to contact the New York Times about the false allegations.  In February 2014, counsel for Mr. Schoen wrote to the New York Times stating that the newspaper would run a "substantial risk of publishing defamatory falsehood if it states or suggests, either directly directly or indirectly, through observations of 'interconnectedness' or otherwise, that there is **any** relationship between Mr. Schoen's activities undertaken on behalf of Mr. Pinchuk in support of philanthropic and democratization initiatives in the Ukraine and Mr. Pinchuk's business activities or international trade proceedings."

41.     On February 12, 2014, the New York Times published an article written by Ms. Chozick entitled, "Trade Dispute Centers on Ukrainian Executive With Ties to Clintons." Notably, although the article purported to describe Mr. Schoen's and Mr. Pinchuk's connections to President and Mrs. Clinton, the article did not repeat or republish the false statements and innuendo about Mr. Schoen that Defendant Cooper had originally fed to the New York Times.

42.     On information and belief, Defendant Cooper published other false statements about Mr. Schoen, substantially identical in content to the false statements contained in his "messaging" points for Ms. Reilly and in his written communications to the New York Times, to other journalists, media outlets, and thought leaders.

**Defendants Statements About Mr. Schoen Are Demonstrably False**

43.    Mr. Schoen is not a "non-lobbyist."  In 2011, Mr. Schoen registered with with the

U.S. Department of Justice under the Foreign Agents Registration Act (FARA) as a registered

agent on behalf of Mr. Pinchuk and, as a result, is a registered lobbyist.  Mr. Schoen's FARA

registration records are publicly available.

44.    Mr. Schoen has never applied "pressure" to the Clintons or to any Clinton advisor

or to U.S. government official on behalf of Interpipe or Mr. Pinchuk.  Nor had Mr. Schoen ever

attempted to influence or "pressure" the Clintons or the U.S. State Department to intervene in

Interpipe's steel dumping trade dispute.  On several occasions between 2011 and 2014, Mr. Schoen

arranged for meetings between Mr. Pinchuk and various advisors to Bill and Hillary Clinton.  Each

meeting was for the sole and exclusive purpose of assisting with humanitarian efforts in the

Ukraine and for a peaceful resolution of Ukrainian conflicts.

**Defendants Took Affirmative Steps To Prevent Mr. Schoen
From Discovering Their False Statements About Him**

45.    Defendant Cooper's defamatory statements about Mr. Schoen were inherently

undiscoverable because they were published secretly to Ms. Reilly and Ms. Chozick.

46.    Defendant Cooper also took affirmative steps to prevent Mr. Schoen from

discovering their false statements about him.  On information and belief, Defendant Cooper

entered into an agreement with Ms. Chozick that prohibited Ms. Chozick from revealing to Mr.

Schoen (or anyone else) that Defendant Cooper was a source for the New York Times article or

that Defendant Cooper had made statements about Interpipe, Mr. Pinchuk, or Mr. Schoen.

47.    The New York Times did not not publish or republish Defendant Cooper's

defamatory statements about Mr. Schoen.

48.    No other mass media outlet published or republished Defendant Cooper's defamatory statements about Mr. Schoen.

49.    No member of Congress or Congressional staffer published or republished Defendant Cooper's defamatory statements about Mr. Schoen.

50.    Ms. Schoen was unaware of Defendant Cooper's false statements to Ms. Reilly and Ms. Chozick until August 2015.

## COUNT 1
## DEFAMATION AND DEFAMATION BY IMPLICATION
### (STATEMENTS TO TRISH REILLY)

51.    Plaintiff repeats and alleges paragraphs 1-50 as if set forth fully herein.

52.    Defendant Cooper published false and defamatory statements of fact regarding Mr. Schoen in the written "messaging" points he directed Ms. Reilly to use in discussed Mr. Schoen with members of Congress, Congressional staffers, media outlets, and other thought leaders in Washington, D.C.

53.    Defendant Cooper's "messaging" points to Ms. Reilly included the false statement that Mr. Schoen, whom he specifically described as "a non-lobbyist," had "met repeatedly" with a senior adviser to [then Secretary of State] Hillary Clinton as part of Interpipe and Victor Pinchuk's concerted efforts to "pull out all the stops" and "pressure" the U.S. State Department to intervene in the dumping dispute on Interpipe's behalf.

54.    Defendant Cooper's statement refers expressly to Mr. Schoen by name and, accordingly, is of and concerning the Plaintiff.

55.    Defendant Cooper's statement is reasonably understood to be a statement of fact regarding Mr. Schoen and was reasonably understood, both by Ms. Reilly and the members of Congress, Congressional staffers, media outlets, and other thought leaders who read or heard it, to be a statement of fact regarding Mr. Schoen.

56.     Defendant Cooper's statements about Mr. Schoen are defamatory because, both directly and by implication, they falsely accused Mr. Schoen of violating FARA and federal lobbying laws, falsely described Mr. Schoen's interactions with senior government officials, and intentionally mischaracterized the philanthropic and humanitarian work that Mr. Schoen was actually undertaking on Mr. Pinchuk's behalf during meetings with U.S. officials.

57.     Defendant Cooper's statements about Mr. Schoen are false in that Mr. Schoen is a registered lobbyist and that Mr. Schoen has never applied "pressure" to the Clintons or to any Clinton advisor or U.S. government official on behalf of Interpipe or Mr. Pinchuk.  Nor had Mr. Schoen ever attempted to influence or pressure the Clintons or the U.S. State Department to intervene in Interpipe's steel dumping trade dispute.

58.     Defendant Cooper's statements about Mr. Schoen are defamatory per se and by implication.  By stating and implying that Mr. Schoen violated federal lobbying laws and attempted to use influence to pressure U.S. government officials, Defendant Cooper stated that Mr. Shown has committed illegal and criminal acts.

59.     Defendant Cooper's statements regarding Mr. Schoen are defamatory in that they would tend to expose Schoen to criminal charges, distrust, hatred, contempt, ridicule, or obloquy, would tend to cause Mr. Schoen to be avoided by others, and would tend to injure Mr. Schoen in the performance of his office, occupation, business, or employment.

60.     Defendant Cooper published his statements about Mr. Schoen with actual malice in that Defendant Cooper had specific knowledge that his statements about Mr. Schoen were false or, alternatively, because he published his statements about Mr. Schoen with reckless disregard for their truth or falsity.  Defendant Cooper recklessly disregarded information in his possession and in the public domain regarding Mr. Schoen's status as a registered lobbyist, Mr. Schoen's

interactions with senior Clinton advisors and other government officials, and the true purpose of those meetings as relating to Mr. Pinchuk's humanitarian concerns for the Ukraine.

61.     Defendant Cooper was acting within the scope of his employment as founder and principal of Defendant Potomac Square Group when he made his false and defamatory statements to Ms. Reilly about Mr. Schoen, in furtherance of a paid client engagement for Defendant Potomac Square Group.   Defendant Potomac Square Group participated in, authorized, and ratified Defendant Cooper's conduct.

62.     As a direct and proximate result of these false and defamatory statements by Defendant Cooper to Ms. Reilly, Mr. Schoen has suffered economic and reputational damages in excess of $100,000, including among other categories of damages, injury to his reputation, embarrassment, humiliation, and economic harm.

## COUNT 2
## DEFAMATION AND DEFAMATION BY IMPLICATION
## (STATEMENTS TO THE NEW YORK TIMES)

63.     Plaintiff repeats and alleges paragraphs 1-62 as if set forth fully herein.

64.     Defendant Cooper published false and defamatory statements of fact regarding Mr. Schoen in a January 13, 2014 email message he authored and sent to Amy Chozick, a reporter for the New York Times.

65.     Defendant Cooper's email to the New York Times included the false statement that Mr. Schoen, whom he specifically described as "a non-lobbyist," had "met repeatedly" with a senior adviser to [then Secretary of State] Hillary Clinton as part of Interpipe and Victor Pinchuk's concerted efforts to "pull out all the stops" and "pressure" the U.S. State Department to intervene in the dumping dispute on Interpipe's behalf.

66.     Defendant Cooper's statement refers expressly to Mr. Schoen by name and, accordingly, is of and concerning the Plaintiff.

67.     Defendant Cooper's statement is reasonably understood to be a statement of fact regarding Mr. Schoen and was reasonably understood, both by Ms. Chozick and others who read or heard it, to be a statement of fact regarding Mr. Schoen.

68.     Defendant Cooper's statements about Mr. Schoen are defamatory because, both directly and by implication, they falsely accused Mr. Schoen of violating FARA and federal lobbying laws, falsely described Mr. Schoen's interactions with senior government officials, and intentionally mischaracterized the philanthropic and humanitarian work that Mr. Schoen was actually undertaking on Mr. Pinchuk's behalf during meetings with U.S. officials.

69.     Defendant Cooper's statements about Mr. Schoen are false in that Mr. Schoen is a registered lobbyist and that Mr. Schoen has never applied "pressure" to the Clintons or to any Clinton advisor or U.S. government official on behalf of Interpipe or Mr. Pinchuk.  Nor had Mr. Schoen ever attempted to influence or pressure the Clintons or the U.S. State Department to intervene in Interpipe's steel dumping trade dispute.

70.     Defendant Cooper's statements about Mr. Schoen are defamatory per se and by implication.  By stating and implying that Mr. Schoen violated federal lobbying laws and attempted to use influence to pressure U.S. government officials, Defendant Cooper stated that Mr. Schoen has committed illegal and criminal acts.

71.     Defendant Cooper's statements regarding Mr. Schoen are defamatory in that they would tend to expose Schoen to criminal charges, distrust, hatred, contempt, ridicule, or obloquy, would tend to cause Mr. Schoen to be avoided by others, and would tend to injure Mr. Schoen in the performance of his office, occupation, business, or employment.

72.     Defendant Cooper published his statements about Mr. Schoen with actual malice in that Defendant Cooper had specific knowledge that his statements about Mr. Schoen were false

or, alternatively, because he published his statements about Mr. Schoen with reckless disregard for their truth or falsity.  Defendant Cooper recklessly disregarded information in his possession and in the public domain regarding Mr. Schoen's status as a registered lobbyist, Mr. Schoen's interactions with senior Clinton advisors and other government officials, and the true purpose of those meetings as relating to Mr. Pinchuk's humanitarian concerns for the Ukraine.

73.    Defendant Cooper was acting within the scope of his employment as founder and principal of Defendant Potomac Square Group when he made his false and defamatory statements to the New York Times about Mr. Schoen, in furtherance of a paid client engagement for Defendant Potomac Square Group.  Defendant Potomac Square Group participated in, authorized, and ratified Defendant Cooper's conduct.

74.    As a direct and proximate result of these false and defamatory statements by Defendant Cooper to the New York Times, Mr. Schoen has suffered economic and reputational damages in excess of $100,000, including among other categories of damages, injury to his reputation, embarrassment, humiliation, and economic harm.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Court to enter an award and judgment in his favor, and against all Defendants jointly and severally, as follows:

(1) awarding Mr. Schoen compensatory damages of not less than $100,000;

(2) awarding Mr. Schoen punitive damages of not less than $300,000;

(3) awarding Mr. Schoen all expenses and costs, including attorneys' fees; and

(4) such other and further relief as the Court deems appropriate.

## JURY DEMAND

75.     Plaintiff demands a trial by jury on all claims and issues so triable.


Date:  November 23, 2015


                                         /s/ Thomas Clare
                                         Thomas A. Clare (DC Bar #461964)
                                         Elizabeth M. Locke (DC Bar #976552)
                                         Dustin A. Pusch (DC Bar #1015069)
                                         CLARE LOCKE LLP
                                         902 Prince Street
                                         Alexandria, VA 22314
                                         Telephone:  (202) 628-7400
                                         tom@clarelocke.com
                                         libby@clarelocke.com
                                         dustin@clarelocke.com